**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

PATRICK LAWRENCE HENDERSON,
*Defendant-Appellant.*

No. 19-30209

D.C. No.
4:09-cr-00074-
BMM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Argued and Submitted October 5, 2020
Seattle, Washington

Filed June 3, 2021

Before: Consuelo M. Callahan and Morgan Christen,
Circuit Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Callahan;
Dissent by Judge Rakoff

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

---

### Criminal Law

The panel affirmed a sentence imposed for violating the terms of supervised release in a case in which the defendant argued that the sentence violates his Fifth and Sixth Amendment rights because it extends his incarceration beyond the maximum term of imprisonment for his underlying conviction, without findings of fact proved to a jury beyond a reasonable doubt.

The panel wrote that the defendant's argument was based on the plurality opinion in *United States v. Haymond*, 139 S. Ct. 2369 (2019), but Justice Breyer's controlling concurring opinion did not adopt the plurality's position. Thus, *Haymond* did not overrule or undermine this court's opinion in *United States v. Purvis*, 940 F.2d 1276 (9th Cir. 1991), which held that a term of supervised release may extend beyond the statutory maximum for the underlying substantive offense. Nor does *Haymond* hold that the right to jury findings proved beyond a reasonable doubt recognized in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), extends to a revocation of supervised release hearing. The panel wrote that when district courts revoke supervised release, the new sentences they impose are treated, for constitutional purposes, "as part of the penalty for the initial offense," *Johnson v. United States*, 529 U.S. 694, 700 (2000).

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting, District Judge Rakoff wrote that the district court violated the Sixth Amendment, as construed by *Apprendi* and its progeny, by sentencing the defendant to more than the prescribed maximum after advising the defendant that his only rights were to have his guilt determined by the judge and by a mere preponderance of the evidence. Judge Rakoff noted that *Purvis* did not address any Sixth Amendment question.

## COUNSEL

David F. Ness (argued), Assistant Federal Defender; Anthony R. Gallagher, Federal Defender; Federal Defenders of Montana, Great Falls, Montana; for Defendant-Appellant.

Kalah A. Paisley (argued), Assistant United States Attorney; Kurt G. Alme, United States Attorney; United States Attorney's Office, Great Falls, Montana; for Plaintiff-Appellee.

## OPINION

CALLAHAN, Circuit Judge:

Patrick Lawrence Henderson appeals his fifteen-month sentence for violating the terms of his supervised release, arguing that it violates his Fifth and Sixth Amendment rights because it extends his incarceration beyond the maximum term of imprisonment for his underlying conviction, without findings of fact proved to a jury beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000). However, Henderson's argument is based on the plurality opinion in *United States v. Haymond*, 139 S.Ct. 2369 (2019), and

Justice Breyer's controlling concurring opinion did not adopt the plurality's position. Thus, *Haymond* did not overrule or undermine our prior opinion in *United States v. Purvis*, 940 F.2d 1276 (9th Cir. 1991), which held a term of supervised release may extend beyond the statutory maximum for the underlying substantive offense. Nor does *Haymond* hold that the right to jury findings proved beyond a reasonable doubt recognized in *Apprendi* extends to a revocation of supervised release hearing. Indeed, as the dissent concedes, when district courts revoke supervised release, the new sentences they impose are treated, for constitutional purposes, "as part of the penalty for the initial offense," *Johnson v. United States*, 529 U.S. 694, 700 (2000). Neither our circuit nor any of our sister circuits has adopted or endorsed Henderson's argument that the terms of imprisonment and the terms of reimprisonment must be aggregated and may not exceed the maximum term of the statute of conviction. Accordingly, we affirm the district court's sentence.

## I.

Following his guilty plea in the United States District Court for the District of Montana, Henderson was convicted in January 2010 of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was sentenced to serve 117 months' imprisonment followed by three years of supervised release. The statutory maximum for felonious possession of a firearm was 120 months. 18 U.S.C. § 924(a)(2).

Henderson began his term of supervised release on September 26, 2018. On October 11, 2018, Henderson was arrested by Montana state officials for felony aggravated assault, which resulted in the victim sustaining injuries, including a broken jaw, broken nose, and extensive damage

to facial bones that required surgery to repair. On October 29, 2018, the United States Probation Office filed a report alleging this assault violated a mandatory condition of Henderson's supervised release. Henderson was allowed to remain on supervised release, but the terms of supervision were modified to require him to undergo a mental health evaluation.[1]

A month later, on November 30, 2018, Henderson was arrested by Montana officials and charged with eleven new offenses, including: four counts of felony burglary, two counts of misdemeanor theft, and three counts of misdemeanor criminal mischief. In April 2019, Henderson entered into a plea agreement in the Cascade County District Court to one count of felony burglary, one count of felony theft, and one count of misdemeanor assault. In June 2019, he was committed to the Montana Department of Corrections for twenty years, with fifteen years suspended.

In July 2019, the United States Probation Office filed an amended charge of violation of supervised release. The petition alleged that Henderson had committed three additional violations since the October 2018 report: (1) he had failed to appear for a scheduled urinalysis test on November 14; (2) he had failed to appear for a scheduled mental health assessment on November 15; and (3) on November 30 he committed new crimes for which he had been convicted and sentenced in state court.

On July 17, 2019, Henderson appeared before a Magistrate Judge for a revocation hearing. Henderson

---

[1] The report noted that Henderson "continued to work full time hours at Golden Corral and has a weekly check-in requirement with his bondman."

admitted that he failed to report for the substance abuse test and the mental health assessment and that he had committed another crime. The Magistrate Judge revoked Henderson's supervised release, sentenced him to incarceration for twenty-one months, with fifteen months of supervised release to follow, and stated that the term of custody should run consecutive to Henderson's state sentence.

Henderson timely objected. He argued that under the Fifth and Sixth Amendments he could only be sentenced to three months' imprisonment because otherwise he would be subjected to a total term of imprisonment greater than the statutory maximum for his underlying crime of being a felon in possession. He also argued that the recommended sentence was substantially unreasonable.

The district court carefully considered Henderson's argument that he could be imprisoned for only three months under *Apprendi*. The district court recognized that *Haymond* raised questions as to the continued viability of Ninth Circuit precedent allowing the preponderance-of-evidence standard to apply in revocation proceedings. But the court noted that *Haymond* was a plurality opinion and that Justice Breyer's concurring opinion limited the case's holding to the mandatory five-year sentence provided by 18 U.S.C. § 3583(k). The district court concluded that it was bound by Ninth Circuit precedent given the lack of a Supreme Court decision directly on point. The district court sentenced Henderson to fifteen months' imprisonment to run consecutive to his state sentence, followed by fifteen months of supervised release. Henderson filed a timely appeal.

## II.

We review de novo a claim that a sentence violates a defendant's constitutional rights. *United States v. Hunt*,

656 F.3d 906, 911 (9th Cir. 2011). *Apprendi* errors are reviewed under the harmless error standard applied in *Neder v. United States*, 527 U.S. 1 (1999). *Id*.

## III.

The district court was correct. In light of our precedent and the lack of a Supreme Court decision directly on point, we are not free to adopt Henderson's argument.

In *Purvis*, the appellant similarly argued that his total time of imprisonment, including a term of supervised release, could not extend beyond the statutory maximum for his underlying substantive offense. 940 F.2d at 1278. We held that "§ 3583 authorizes the revocation of supervised release even where the resulting incarceration, when combined with the period of time the defendant has already served for his substantive offense, will exceed the maximum incarceration permissible under the substantive statute." *Id*. at 1279. In declining Purvis' arguments, we noted that under his theory, "although supervised release could still be *imposed* when a defendant is sentenced to the statutory maximum period of incarceration, the imposition would accomplish nothing in the case of the most serious offenders—those who actually serve the maximum, or close to the maximum, period of time." *Id*. (emphasis in original). Thus, "[f]or those defendants, no violation of the terms of their supervised release, no matter how egregious, could ever result in its revocation." *Id*.

We are bound by our prior opinion unless an intervening case so undercuts the theory or reasoning underlying the prior circuit precedent as to make it clearly irreconcilable with that intervening authority. *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1072–73 (9th Cir. 2018) (citing *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc)).

**IV.**

Henderson argues that *Johnson*, 529 U.S. at 700, recognized that supervised release was part of the penalty for the initial offense, *see Haymond*, 139 S.Ct. at 2370–80, and that the application of decisions such as *Apprendi* and *Alleyne v. United States*, 570 U.S. 99 (2013), compels the determination that the revocation of supervised release may not extend a person's incarceration beyond the statutory maximum for the underlying offense on a preponderance of evidence standard without a jury. Our dissenting colleague argues that our decision in *Purvis* is inapposite because the constitutional questions raised by Henderson were not discussed in that case. But because in *Purvis* we held that a revocation sentence is part of the maximum sentence authorized for the underlying offense, *Purvis* dictates that Henderson's revocation sentence does not trigger the constitutional analysis set forth in *Apprendi*.

*Apprendi* held that a judge may not increase a defendant's sentence beyond the statutory maximum based on the judge's finding of new facts by a preponderance of the evidence. 530 U.S. at 495. Our decision in *Purvis* informs whether a revocation sentence exceeds the statutory maximum for an underlying offense. There, we explained that a term of supervised release and any resulting revocation sentence are part of the sentence authorized for the underlying criminal conviction. Indeed, the dissent and Henderson both acknowledge that the term of supervised release is part of the original sentence.

The dissent and Henderson further assert that because the terms of supervised release are part of the original sentence, *Johnson* and *Haymond* require that the terms of imprisonment and the terms of reimprisonment must be aggregated and may not exceed the maximum term of the

statute of conviction.  Thus, they argue that Henderson could be reimprisoned for only three months because a longer sentence would exceed the statutory maximum for his underlying crime of being a felon in possession.

This argument is based, in large part, on the plurality opinion in *Haymond* and fails to recognize Justice Breyer's narrower controlling concurring opinion.  It also overstates the plurality's holding.  Haymond was found guilty by a jury of possessing child pornography in violation of federal law. *Haymond*, 139 S.Ct. at 2373.  The law authorized a sentence of up to ten years.  *Id*.  Haymond was sentenced to a prison term of thirty-eight months, followed by ten years of supervised release.  *Id*.  While he was on supervised-release the government moved to revoke his supervised release, alleging that he possessed child pornography.  *Id*. at 2374. A judge determined, based on a preponderance of the evidence, that Haymond had knowingly downloaded and possessed thirteen images of child pornography.  *Id*.

Under 18 U.S.C. § 3583(e)(3), a district judge would usually have had discretion to sentence Haymond to between zero to two additional years in prison.  *Id*.  But because possession of child pornography was one of several offenses enumerated under § 3583(k), the judge was required to "impose an additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendant's initial crime of conviction." *Id*.  The district judge reluctantly imposed the mandatory five-year punishment.  On appeal, the Tenth Circuit found that this sentence violated Haymond's right to a jury trial because the "new prison term included a new and higher mandatory minimum resting only on facts found by a judge by a preponderance of the evidence."  *Id*. at 2375.

On review by the Supreme Court, the plurality agreed that the application of § 3583(k)'s mandatory minimum violated Haymond's right to trial by jury, *id*. at 2384–85, but did not decide the issue before us. Henderson frames the question presented as whether a judge, acting without a jury, may revoke supervised release based on a preponderance of the evidence and impose a punishment that extends beyond the maximum time allowed for the underlying criminal conviction. We disagree with Henderson's premise because a term of supervised release and consequent revocation sentence is part of the maximum sentence authorized for the original conviction.

If a revocation were not part of the sentence imposed for the underlying offense, language in Justice Gorsuch's plurality opinion would support Henderson's argument. Contrasting § 3583(k) with parole, probation, and supervised release, the plurality stated that "§ 3583(k) alone requires a substantial increase in the minimum sentence to which a defendant may be exposed based only on judge-found facts under a preponderance standard. And, as we explained in *Alleyne* and reaffirm today, that offends the Fifth and Sixth Amendments' ancient protections." *Id*. at 2382. Indeed, if that had been the question presented by Henderson's appeal, and *if* Justice Gorsuch's view had been embraced by a majority, we might agree with Henderson and our dissenting colleague.[2]

---

[2] The breadth of the plurality opinion was cabined by its statement:

> But what agitates the dissent so much is an issue not presented here: whether *all* supervised release proceedings comport with *Apprendi*. As we have emphasized, our decision is limited to § 3583(k)—an unusual provision enacted little more than a decade

But Henderson's term of supervised release was part of his original sentence for the underlying criminal conviction, and Justice Gorsuch's opinion was joined by only three other justices.[3]  Justice Alito's dissent on the very issue that is critical to our case also commanded four votes.  Justice Breyer's separate concurrence in the judgment is therefore controlling.  The Supreme Court has directed that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"  *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ)); *see also United States v. Davis*, 825 F.3d 1014, 1016 (9th Cir. 2016) (en banc); *United States v. Austin*, 676 F.3d 924, 927 (9th Cir. 2012).

Justice Breyer's concurrence begins with him agreeing "with much of the dissent, in particular that the role of the judge in a supervised-release proceeding is consistent with traditional parole." *Haymond*, 139 S.Ct. at 2385.  He further

> ago—and the *Alleyne* problem raised by its 5-year mandatory minimum term of imprisonment.  Section § 3583(e), which governs supervised release revocation proceedings generally, does not contain any similar mandatory minimum triggered by judge-found facts.

*Id*. at 2383–84. (citation omitted).  Thus, even if the plurality opinion were the majority opinion it would not clearly extend *Apprendi* to all supervised release proceedings.

[3] Justices Ginsburg, Sotomayor, and Kagan joined Justice Gorsuch's opinion.  Chief Justice Roberts and Justices Thomas and Kavanaugh joined Justice Alito's dissent.

stated that he "would not transplant the *Apprendi* line of cases to the supervised-release context." *Id*. Nonetheless, he agreed with the plurality that "this specific provision of the supervised-release statute, 3583(k), is unconstitutional." *Id*. at 2386. Justice Breyer cited three aspects of the provision that led him to conclude that "it is less like ordinary revocation and more like punishment for a new offense." *Id*. He explained that § 3583(k) "applies only when a defendant commits a discrete set of federal criminal offenses specified in the statute;" "takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long"; and "limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of 'not less than 5 years.'" *Id*. Justice Breyer concluded that because the statute "more closely resembled the punishment of new criminal offenses, but without granting a defendant the rights, including the jury right that attend a new criminal prosecution," he would "hold that § 3583(k) is unconstitutional." *Id*.

Henderson's term of supervised release was imposed as part of his original sentence, and his revocation sentence was imposed under § 3583(e), not § 3583(k). Furthermore, none of the concerns raised by Justice Breyer apply to Henderson's revocation hearing or sentence. His violations of supervised release are not within a "discrete set of federal criminal offenses specified in the statute," the judge had the discretion to determine whether Henderson should be imprisoned and for how long, and there was no mandatory minimum sentence. Thus, Henderson's proceeding was an "ordinary revocation" rather than "punishment for a new offense."

Furthermore, Justice Alito's dissent, much of which Justice Breyer indicated he agreed with, reiterates some of the concerns that underlay our opinion in *Purvis*.  Justice Alito opined that at a supervised-release revocation proceeding, as "[a]t a parole revocation hearing, the fundamental requisites of due process had to be observed, but a parolee did not have a right to a jury trial." *Id*. at 2391. He stated that "[t]he principal reason for assigning a penalty to a supervised-release violation is not that the violative act is a crime (indeed, under other provisions in § 3583, the act need not even be criminal); rather, it is that the violative act is a breach of trust." *Id*. at 2393.  He concluded that "[c]onvicts like respondent on supervised release thus enjoy only conditional liberty," and that the Court's decisions that mention conditional liberty "speak only of general due process rights, not other constitutional protections that unaccused and unconvicted individuals enjoy." *Id*. at 2399.

Our reading of *Johnson* and *Haymond* leads us to agree with our sister circuits that those opinions do not prohibit a sentence for a supervised release violation that, when aggregated with the sentence the defendant has already served, extends beyond the maximum sentence for the underlying crime.  *Johnson* affirmed that "district courts have the authority to order terms of supervised release following reimprisonment." 529 U.S. at 713. We agree with the Tenth Circuit that *Johnson*, "did not adopt or endorse an aggregation approach." *United States v. Salazar*, 987 F.3d 1248, 1256 (10th Cir. 2021).  The Tenth Circuit further read *Haymond* as supporting its prior position "that *Apprendi* does not apply to standard revocation proceedings under § 3583(e)—even when a defendant's aggregate time in prison exceeds the statutory maximum sentence for the crime of conviction." *Id* at 1260–61.  In *United States v. Seighman*, 966 F.3d 237, 244–45 (3d Cir. 2020), the Third

Circuit likewise rejected the argument that *Haymond* limited a sentence of imprisonment for a violation of supervised release to the unserved portion of the maximum sentence for the underlying crime.[4]  The Eleventh Circuit noted in *United States v. Cenna*, 448 F.3d 1279, 1280 (11th Cir. 2006), that "a court may impose the maximum term of imprisonment under the statute of conviction and a term of supervised release, because supervised release is an independent part of a defendant's sentence."  Similarly, the Second Circuit in *United States v. Wirth*, 250 F.3d 165, 170 (2nd Cir. 2001), noted that it was "well-settled . . . that punishment for a violation of supervised release is separate from punishment for the underlying conviction and may, when combined with the latter, exceed the statutory maximum for the underlying offense."  Certainly, *Cenna* and *Wirth* precede *Haymond*, but in light of Justice Breyer's controlling concurring opinion, with its statement that he "would not transplant the *Apprendi* line of cases to the supervised release context," 139 S.Ct. 2385, *Haymond* does not alter the well-settled rule that Henderson's sentence for violating the terms of supervised release does not exceed the maximum sentence for his initial conviction.

In sum, reviewing Henderson's constitutional challenge to our holding in *Purvis*, we do not read *Haymond* or any

---

[4] Furthermore, in *United States v. Eagle Chasing*, 965 F.3d 647, 651 (8th Cir. 2020), the Eighth Circuit recognized that *Haymond* does not at this time, but could in the future, lead to a rule that "the sum of a defendant's initial and revocation sentences is a total of imprisonment exceeding the statutory maximum."  Also, in *United States v. Coston*, 964 F.3d 289, 295 (4th Cir. 2020), the Fourth Circuit recognized that Justice Breyer's concurrence "departed from the plurality in two key ways: it found that supervised release is not so different from traditional parole, and that *Apprendi* and *Alleyne* do not apply in the supervised release context."

other Supreme Court opinion as holding that a defendant's otherwise reasonable sentence for violating the terms of supervised release may not exceed, when aggregated with the time the defendant was imprisoned for the underlying crime, the maximum statutory sentence for the underlying crime. Accordingly, the district court's order is **AFFIRMED**.

RAKOFF, J., dissenting:

Ultimately, this case is controlled by the Sixth Amendment to the U.S. Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." U.S. Const. amend. VI. In *Apprendi v. New Jersey*, the Supreme Court held that this means, among other things, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" unless the defendant knowingly waives these rights. 530 U.S. 466, 490 (2000). Yet here, the defendant was sentenced to more than the prescribed maximum after being advised by a judge that his only rights were to have his guilt determined by the judge and by a mere preponderance of the evidence. This violated the Sixth Amendment, as construed by *Apprendi* and its progeny.

To be sure, the supervised release system writ large is consistent with the Sixth Amendment. When a defendant is found guilty by a jury (or pleads guilty after having been advised of his right to a jury trial where the Government would have to prove his guilt beyond a reasonable doubt), the sentencing judge may impose a sentence of less than the prescribed maximum conditioned on the defendant's

complying with the terms of supervised release. A violation of supervised release would then vitiate that bargain and allow the judge to send the defendant back to prison to serve more or all of the prescribed maximum term. In assessing the defendant's compliance with the terms of supervised release, the judge may make her own determinations by a preponderance of the evidence. Decades of Supreme Court case law support this practice.

But, as *Apprendi* and its progeny show, the judge's constitutional authority to sentence a supervisee ultimately stems from the original jury conviction or informed guilty plea. Accordingly, upon finding a violation of supervised release the judge may not impose a prison term that, together with the original term, would exceed the statutory maximum for the underlying offense—unless the defendant is given, or knowingly waives, a trial by jury at which the Government must prove guilt beyond a reasonable doubt. Otherwise, the judge effectively arrogates to herself the power that the Sixth Amendment gives solely to a jury.

My colleagues do not directly disagree with this analysis. Rather, they conclude that as a three-judge panel "reviewing Henderson's constitutional challenge to our holding in [*United States v. Purvis*, 940 F.2d 1276 (9th Cir. 1991)]," Maj. Op. at 14, we are bound by that prior determination because *Apprendi* and its progeny have not "so undercut[] the theory or reasoning underlying the prior circuit precedent as to make it clearly irreconcilable with that intervening authority," *id.* at 7. But *Purvis* addressed whether "[18 U.S.C.] § 3583 *authorizes* the revocation of supervised release" and the imposition of an additional sentence. *Purvis*, 940 F.2d at 1279 (emphasis added). *Purvis* did not address, because the defendant did not raise, any Sixth Amendment question. *See* Appellant's Opening Br. 16–24,

*Purvis*, No. 90-50183 (raising only Indictment Clause and statutory interpretation arguments).  Yet, because *Purvis* held that a sentence like Henderson's is statutorily authorized, my colleagues decline to afford plenary review to the important constitutional questions Henderson raises.

In short, the majority has discovered a new form of *stare decisis*: this Court must decline to address a constitutional issue squarely presented because a prior panel did not address a constitutional issue never raised.  That is not the law of this Circuit, so I would reach the constitutional question.  I respectfully dissent.

I.

In January 2010, Patrick Lawrence Henderson pled guilty to being a felon in possession of a firearm and was sentenced to 117 months' imprisonment—near the statutory maximum of 120 months—followed by 3 years' supervised release.  Not long after his release, he was arrested, and he was later charged in state court with various criminal offenses.  Having been advised of his right to a jury trial on these charges, he pled guilty to one count each of felony burglary and felony theft, as well as misdemeanor assault.  In June 2019, he was sentenced in state court to 20 years' imprisonment, with fifteen years suspended.  He is now serving that sentence.

In July 2019, shortly after Henderson was sentenced in state court, the United States Probation Office petitioned to revoke Henderson's term of supervised release, alleging three violations: (1) failure to report for a drug test, (2) failure to report for a mental health appointment, and (3) the state-law crimes to which he had pled guilty.  Henderson provisionally agreed to admit the specifications, and the magistrate judge recommended that the district court

revoke Henderson's term of supervised release and impose a 21-month term of imprisonment, to be followed by a 15-month term of supervised release. Henderson filed objections.

The forum then moved to the district court, where Henderson again provisionally agreed to admit the specifications. The district judge then advised Henderson of the rights he would be giving up if he admitted the specifications, specifically, a hearing before the judge at which the Government would have the burden to prove the alleged violations by a preponderance of the evidence. Henderson agreed to give up those rights and admit the specifications. At sentencing, however, Henderson argued that, under the Fifth and Sixth Amendments, he could only be sentenced to, at most, 3 months' imprisonment, since a greater sentence would subject him to a total term of imprisonment greater than the statutory maximum for his underlying crime of being a felon in possession, on which his conditions of supervised release were premised. He also objected that the recommended sentence was substantively unreasonable.

The district court overruled the constitutional objections, finding that Henderson had no right either to trial by jury or to proof beyond a reasonable doubt. The court revoked Henderson's term of supervised release and imposed a prison term of fifteen months, to be followed by a fifteen-month term of supervised release. Henderson timely appealed. On appeal, he raises only the constitutional objections he pressed before the district court.

II.

Before we can consider Henderson's argument, we must first determine whether the Ninth Circuit has already done

so. The majority finds that this case is controlled by *United States v. Purvis*, 940 F.2d 1276 (9th Cir. 1991). I respectfully disagree.

We are "bound by our prior opinion[s] unless an intervening case so undercuts the theory or reasoning underlying the prior circuit precedent as to make the precedent clearly irreconcilable with that intervening authority." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1072–73 (9th Cir. 2018) (citing *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc)). But opinions do not bind with respect to issues that they do not address. The Court, sitting en banc, has explained this process as follows: "[i]n [a prior case], the [issue] was . . . presented for review. We addressed the issue and decided it in an opinion joined in relevant part by a majority of the panel. Consequently, our articulation of [the issue] became law of the circuit . . . ." *Barapind v. Enomoto*, 400 F.3d 744, 750–51 (9th Cir. 2005) (en banc) (per curiam) (footnotes omitted).

Thus, a subsequent panel must ask whether an issue was "presented," "addressed," and "decided" in a published opinion. *Id.; see also Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004). Conversely, in this Circuit and throughout the United States, courts do not consider themselves bound by prior cases if the issue before the court was not "squarely addressed" therein. *Brecht v. Abrahamson*, 507 U.S. 619, 630–31 (1993).

The panel in *Purvis* did not consider, let alone address and decide, the constitutional issues now pressed by Henderson. Indeed, the issues were not even raised in *Purvis*. *See* Appellant's Opening Br., *Purvis*, No. 90-50183; Appellee's Br., *Purvis*, No. 90-50183. This is hardly surprising, since *Apprendi* was not decided until nine years later.

Admittedly, the *facts* in *Purvis* were analogous to the instant case: a district court revoked Purvis's term of supervised release and sentenced him to a term of imprisonment that, when combined with his original term of imprisonment, exceeded the statutory maximum that the court originally could have imposed based upon his conviction. Purvis, however, argued that Congress had not authorized this result, and this court disagreed, "hold[ing] that [18 U.S.C.] § 3583 authorizes the revocation of supervised release even where the resulting incarceration, when combined with the period of time the defendant has already served for his substantive offense, will exceed the maximum incarceration permissible under the substantive statute." *Purvis*, 940 F.2d at 1279. Thus, *Purvis* was principally a statutory interpretation case; it asked whether "§ 3583 authorizes" such a result. The Court held that it does, and that is the law of this Circuit.

Henderson does not dispute any of that. He argues that the sentence, while statutorily authorized, is unconstitutional under the Due Process Clause of the Fifth Amendment and the Sixth Amendment right to trial by jury. Purvis did not raise these issues. His only constitutional argument was that his sentence violated the Indictment Clause. Appellant's Opening Br. 16–24, *Purvis*, No. 90-50183. He also raised a constitutional avoidance argument, again premised on the Indictment Clause, which this Court declined to consider. *Purvis*, 940 F.2d at 1279 n.1 ("Mr. Purvis also argues that where a statute is susceptible of more than one interpretation, we should choose the interpretation that avoids raising constitutional issues. That principle is inapplicable where,

as here, precedents preclude us from reasonably interpreting the statute in more than one way.").[1]

Because *Purvis* did not consider, address, and decide the issues raised by Henderson, this panel is free to do so. I would reach the merits.

## III.

It should go without saying that the right not to be criminally punished except upon a jury verdict finding proof of guilt beyond a reasonable doubt is a hallowed and precious right that goes back at least to the time of the Magna Carta, which provided that "[n]o free man shall be taken or imprisoned or outlawed, or exiled, or in any way ruined, nor will we go against or send against him, except by the lawful judgment of his peers, or by the law of the land." Magna Carta ch. 39 (1215). No group was more aware of these rights than the Founding Fathers, who had protested their erosion at the hands of the British colonial judges. In the words of Justice Story, "trial by jury in criminal cases . . . was from very early times insisted on by our ancestors in the parent country, as the great bulwark of their civil and political liberties, and watched with an unceasing jealousy and solicitude." 3 J. Story, Commentaries on the Constitution of the United States § 1773 (1833). The early Americans "brought this great privilege with them, as their birth-right and inheritance, as a part of that admirable common law, which had fenced round, and interposed

---

[1] These prior Ninth Circuit "precedents"—which, by the way, the *Purvis* court acknowledged were, in relevant part, "dicta," *id.* at 1279— never addressed the constitutional issues, either. *See U.S. v. Doering*, 909 F.2d 392 (9th Cir. 1990); *U.S. v. Linares*, 921 F.2d 841 (9th Cir. 1990); *U.S. v. Montenegro-Rojo*, 908 F.2d 425 (9th Cir. 1990); *U.S. v. Robertson*, 901 F.2d 733 (9th Cir. 1990).

barriers on every side against the approaches of arbitrary power." *Id.* In particular, trial by jury offered "security against the prejudices of judges, who may partake of the wishes and opinions of the government, and against the passions of the multitude, who may demand their victim with a clamorous precipitancy." *Id.* § 1774.

This guarantee was enshrined in the Sixth Amendment, which, as noted, provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI. And in the centuries since, the Supreme Court has continuously recognized that defendants' jury trial rights must "be jealously preserved." *Patton v. United States*, 281 U.S. 276, 312–13 (1930), *abrogated on other grounds by Williams v. Fla.*, 399 U.S. 78 (1970). For example,

> the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.

*Id.*

In recent decades, the Supreme Court's seminal case on this topic was *Apprendi*, in which the Court considered a law permitting longer sentences if a trial judge found, based upon a preponderance of the evidence, that a convicted defendant had committed a hate crime. The Supreme Court found this practice unconstitutional, holding that "[o]ther than the fact of a prior conviction"—where, of course, a right to jury trial and proof beyond a reasonable doubt is present during that prior proceeding—"any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" or admitted through a guilty plea after a defendant knowingly waived the right to such a trial. *Apprendi*, 530 U.S. at 490. In 2004, the Court recognized that the same principle applied to a state's sentencing regime in which judicial factfinding permitted an "exceptional" sentence greater than the maximum authorized by the jury's factual findings. *Blakely v. Washington*, 542 U.S. 296, 303 (2004). And in 2013, the Court recognized that the reasoning "applies with equal force to facts increasing the mandatory minimum." *Alleyne v. United States*, 570 U.S. 99, 111–112 (2013). It is now beyond cavil that, regardless of the particular context in which a sentence is imposed, "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." *Blakely*, 542 U.S. at 304 (internal quotation marks and citation omitted).

To be sure, a judge's sentence below the maximum sentence the jury has authorized can be conditioned on adherence to specified requirements. Thus, while judges have long been empowered to sentence a convicted defendant to probation rather than prison, 18 U.S.C. § 3561 (1982 ed.), probationers (and parolees) have to abide by

conditions of release.  If they violate them, they can be sent (or sent back) to prison for up to the maximum sentence originally authorized by the statute of conviction.  *See Morrissey v. Brewer*, 408 U.S. 471, 478 (1972).  As the Supreme Court explained in 1972, "[t]he enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out *the balance of his sentence* if he fails to abide by the rules."  *Id.* at 478–79 (emphasis added).

Congress substantially modified the federal sentencing system with the Sentencing Reform Act of 1984.  The use of parole was largely phased out, and instead Congress permitted courts to sentence convicted defendants to terms of "supervised release" following imprisonment.  But none of this could alter the hoary constitutional principles embodied in the Fifth and Sixth Amendments.

Last year, a plurality of the Supreme Court recognized as much in *Haymond v. United States*, 139 S. Ct. 2369 (2019), where the Court held unconstitutional the last two sentences of 18 U.S.C. § 3583(k), which provide that when a supervisee "required to register under the Sex Offender Registration and Notification Act commits any [of several] criminal offense[s] . . . , the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment . . .  not less than 5 years."

Writing for the four-justice plurality, Justice Gorsuch explained that "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty."  *Haymond*, 139 S. Ct. at 2373 (plurality).

> Based on the facts reflected in the jury's verdict, Mr. Haymond faced a lawful prison term of between zero and 10 years under

§ 2252(b)(2). But then a judge—acting without a jury and based only on a preponderance of the evidence—found that Mr. Haymond had engaged in additional conduct in violation of the terms of his supervised release. Under § 3583(k), that judicial factfinding triggered a new punishment in the form of a prison term of at least five years and up to life.

*Id.* at 2378. The plurality analogized to *Alleyne v. United States*, 570 U.S. 99 (2013), explaining that in both cases, a judge found facts that "increased the legally prescribed range of allowable sentences," and concluding that in both cases this was "in violation of the Fifth and Sixth Amendments." *Id.* (internal quotation marks omitted). The Court thus found the statutory provision unconstitutional as applied to Haymond.

The plurality rejected the Government's argument that revocation proceedings were somehow different from ordinary sentencings for constitutional purposes. The Court explained that "any increase in a defendant's authorized punishment contingent on the finding of a fact requires a jury and proof beyond a reasonable doubt no matter what the government chooses to call the exercise." *Id.* at 2379 (internal quotation marks and citation omitted).

To be sure, the plurality explicitly declined to reach § 3583(e), the more general supervised release provision at issue in the case now before us, but it recognized that its holding could be read to "raise Sixth Amendment issues in a small set of cases" under § 3583(e). *Id.* at 2384. It emphasized that few such cases would raise issues because "[i]n most cases (including [*Haymond*]), combining a

defendant's initial and post-revocation sentences issued under § 3583(e) will not yield a term of imprisonment that exceeds the statutory maximum term of imprisonment the jury has authorized for the original crime of conviction." *Id.*

Concededly, the case before us is not controlled by *Haymond*, because Justice Breyer concurred in the judgment, providing the fifth vote to strike down the last two sentences of § 3583(k).  He cautioned in dictum that he "agree[d] with much of the dissent, in particular that the role of the judge in a supervised-release proceeding is consistent with traditional parole."  *Haymond*, 139 S. Ct. at 2385 (Breyer, J., concurring in the judgment).  However, he nevertheless found § 3583(k) unconstitutional, reasoning that it was unlike ordinary supervised release and more like punishment for a new crime, for three reasons:

> First, § 3583(k) applies only when a defendant commits a discrete set of federal criminal offenses specified in the statute. Second, § 3583(k) takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long.  Third, § 3583(k) limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of "not less than 5 years" upon a judge's finding that a defendant has "commit[ted] any" listed "criminal offense."

*Id.* at 2386.

Because the plurality and Justice Breyer did not agree upon a single rationale, and because Justice Breyer's rationale is not a logical subset of the plurality's (or vice-

versa), the Court's fractured decision leaves open the question presented here.[2]  And it seems to me that the logic of *Apprendi* and its progeny, not to mention the plain dictates of the Sixth Amendment, compel that we vacate the judgment in this case.

It is well-established that when district courts revoke supervised release, the new sentences they impose are treated, for constitutional purposes, "as part of the penalty for the initial offense." *Johnson v. United States*, 529 U.S. 694, 700 (2000).  Thus, for example, applying to a supervisee a supervised release statute enacted after his original conviction raises ex post facto concerns.  *See id.* (construing statute not to apply retroactively).

It follows that Henderson's fifteen-month revocation sentence must be "treated as part of the penalty for" being a felon in possession of a firearm.  The district court has thus imposed a total prison term of 132 months for that offense. Based upon Henderson's original conviction standing alone, the district court was not statutorily authorized to impose such a sentence.  The court's statutory power to impose this heightened sentence stems from its further factual finding that Henderson violated the terms of his supervised release. But "[w]hen a judge inflicts punishment that the jury's

---

[2] *United States v. Davis*, 825 F.3d 1014, 1028 (9th Cir. 2016) (en banc) ("In sum, when applying *Marks* [*v. United States*, 430 U.S. 188 (1977)] to a fractured Supreme Court decision, we look to those opinions that concurred in the judgment and determine whether one of those opinions sets forth a rationale that is the logical subset of other, broader opinions.  When, however, no 'common denominator of the Court's reasoning' exists, we are bound only by the 'specific result.'").  It is also irrelevant that Justice Breyer, in dicta, agreed with the dissent on some points.  *See id.* at 1029 (Christen, J., concurring) ("[D]issents play no role in a *Marks* analysis.").

verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." *Blakely v. Washington*, 542 U.S. 296, 304 (2004) (internal quotation marks and citation omitted). Because the district court's findings increased "the legally prescribed range of allowable sentences," *Alleyne*, 570 U.S. at 115, without offering the defendant a jury trial at which the Government would be required to prove the violations beyond a reasonable doubt, the sentence violated Henderson's Fifth and Sixth Amendment rights.[3]

My colleagues note that they "might agree with" this analysis, but for two issues. Maj. Op. at 10. First, Justice Gorsuch's opinion did not command a majority, so it does not undermine *Purvis*. But, as previously noted, *Purvis* addressed a *statutory* question; *Apprendi* and its progeny, including *Haymond*, did not. Thus, while *Purvis* has not been overruled by *Haymond*, neither does it control on the constitutional question here presented. I would hold that the slate is clean and that we should adopt Justice Gorsuch's reasoning in *Haymond* not because it is binding precedent, but because it correctly applies the Fifth and Sixth Amendments.

Second, the majority disagrees with my analysis because "a term of supervised release and any resulting revocation sentence are part of the sentence authorized for the

---

[3] The *Haymond* dissent argued that supervised release is analogous to parole and, thus, governed by the Supreme Court's opinions establishing lesser protections for parole revocation hearings. But this is irrelevant to our case. A violation of parole allows the sentencing judge to sentence the defendant to serve out the balance of his authorized sentence; it does not provide the possibility of a sentence exceeding the statutory maximum, which is the issue here.

underlying criminal conviction." *Id.* at 8.    Thus, my colleagues reason that a jury verdict conditionally authorizes subsequent sentences for revocations of supervised release. But *Apprendi* prohibited precisely that: a regime where jury verdicts authorize future sentences, conditioned on subsequent factual findings by judges.  As Justice Gorsuch explained,

> on the strength of the jury's findings the judge was entitled to impose as punishment a term of supervised release; and, in turn, that term of supervised release was from the outset always subject to the possibility of judicial revocation and § 3583(k)'s mandatory prison sentence.  Presto[, the Government argues]: Sixth Amendment problem solved.
>
> But we have been down this road . . . . In *Apprendi* and *Alleyne*, the jury's verdict triggered a statute that authorized a judge at sentencing to increase the defendant's term of imprisonment based on judge-found facts. Th[e] [Supreme] Court had no difficulty rejecting that scheme as an impermissible evasion of the historic rule that a jury must find all of the facts necessary to authorize a judicial punishment.  And what was true there can be no less true here.

*Haymond*, 139 S. Ct. at 2381 (plurality) (citations omitted). A jury's verdict does not trigger a perpetual motion machine that would "allow the government to evade the need for another jury trial on any other offense the defendant might commit"; rather, it authorizes a discrete set of punishments.

*Id.*    Here, those punishments included 120 months'
imprisonment, but no more.[4]

---

**[4]** My colleagues also distinguish § 3583(k), the statute at issue in
*Haymond*, because it required imposition of a mandatory *minimum*,
while here, revocation increased the *maximum* sentence that the judge
could impose beyond the previously applicable 120 months.  But the
Supreme Court resolved that question years ago, stating unequivocally
that "there is no basis in principle or logic to distinguish facts that raise
the maximum from those that increase the minimum."  *Alleyne*, 570 U.S.
at 116.  I recognize that Justice Breyer's concurring opinion in *Haymond*
relied upon the fact that § 3583(k) imposed a mandatory minimum, but
Justice Breyer's concurrence cannot erase the majority's holding in
*Alleyne*.    Indeed, this is not the first time that Justice Breyer has
suggested treating maximum and minimum sentences differently for
purposes of *Apprendi* analysis, and the outcome on that prior occasion is
instructive.  In 2002, Justice Breyer offered the fifth vote to uphold a
mandatory minimum sentencing scheme based on judge-found facts.  He
acknowledged that mandatory minimum sentences and maximum
sentences "cannot easily [be] distinguish[ed] . . . in terms of logic."
*Harris v. United States*, 536 U.S. 545, 569–70 (2002) (Breyer, J.,
concurring in the judgment).    However, because he disagreed with
*Apprendi* and sought to limit its expansion, he "join[ed] the Court's
judgment, and . . . its opinion to the extent that it holds that *Apprendi*
does not apply to mandatory minimums."  *Id.*    Eleven years later,
however, conceding that *Apprendi* was here to stay, Justice Breyer
accepted that "the law should no longer tolerate the anomaly that the
*Apprendi*/*Harris* distinction creates."  *Alleyne*, 570 U.S. at 122 (2013)
(Breyer, J., concurring in part).  He explained why maximums and
minimums must be treated the same for purposes of *Apprendi* analysis:

> Where a *maximum* sentence is at issue, *Apprendi*
> means that a judge who *wishes* to impose a higher
> sentence cannot do so unless a jury finds the requisite
> statutory factual predicate.    Where a *mandatory
> minimum* sentence is at issue, application of *Apprendi*
> would mean that the government cannot force a judge
> who *does not wish* to impose a higher sentence to do
> so unless a jury finds the requisite statutory factual

IV.

While, in my opinion, reversal in our case is compelled by the logic of *Apprendi* and the plain language of the Sixth Amendment, one should not be blind to consideration of the practical implications of such a result. Indeed, Justice Alito's dissent in *Haymond* paints an apocalyptic vision that the federals court will face tens of thousands of additional criminal jury trials if the defendant's view prevails.

Justice Alito describes the problem this way:

> In 2018, federal district courts completed 1809 criminal jury trials. During that same year, they adjudicated 16,946 revocations of supervised release, and there is simply no way that the federal courts could empanel enough juries to adjudicate all those proceedings.[5]

---

> predicate. In both instances the matter concerns higher sentences; in both instances factfinding must trigger the increase; in both instances jury-based factfinding would act as a check . . . .

*Id.* at 123–24. Justice Breyer (and a majority of the Court) got it right in *Alleyne*. Thus, I would treat the increased *maximum* to which Henderson was here subjected no differently than the increased *minimum* to which Haymond was subjected.

[5] *Id.* (citing Admin. Office of U. S. Courts, Judicial Business of the United States Courts (2018) (Tables T–1 & E–7A).

Justice Alito is correct that there are tens of thousands of revocation adjudications every year.[6]  Indeed, for the five years ending September 30, 2017, United States Sentencing Commission data shows 107,998 revocation hearings, which amounts to 21,600 hearings per year, on average—even slightly higher than the figure Justice Alito identified for 2018.[7]  But this figure is totally misleading because, in fact, very very few of these revocation hearings would raise the constitutional issues presented here or result in a jury trial, for at least three reasons.

First, the overwhelming majority of supervisees admit the violations with which they are charged.  This presumably would be even more so if they knew the sentence the judge could impose was capped at the statutory maximum for the underlying offense.  To be more precise, according to the U.S. Sentencing Commission, in the five years ending September 30, 2017, "[o]ffenders admitted to the alleged violation in 81.9% of the violation cases."[8]  And in those rare situations where the Government or the Court wished to avoid the cap, the issues presented here could still be avoided if the defendant waived his right to a jury trial and to proof beyond a reasonable doubt.

Second, as the *Haymond* plurality correctly noted, federal judges very rarely sentence defendants at or near the

---

[6] In comparison, there are around 76,538 individuals sentenced in federal court in non-revocation-related proceedings each year.  United States Sentencing Comm'n, Fiscal Year 2019: Overview of Federal Criminal Cases 1.

[7] United States Sentencing Comm'n, Federal Probation and Supervised Release Violations 30 (July 2020).

[8] *Id.*

statutory maximum, thus leaving plenty of room for meaningful sentences for supervised release violations, even if the sentence was capped at the statutory maximum in order to avoid the right to a jury. Specifically, according to the U.S. Sentencing Commission, for the year ending September 30, 2016, only 4.4% of federal criminal sentences following conviction were at or within one year of the statutory maximum.[9]

Furthermore, sentences for violations of supervised release tend to be less than one year. For the five-year period ending September 30, 2017, 13.9% of supervisees were sentenced to punishments other than prison; for the remainder, "the average term of imprisonment imposed . . . was 11 months."[10] Since supervised release sentences are generally less than a year, and judges very rarely sentence defendants to a term within one year of the statutory maximum, very few supervisees will be in Henderson's situation.

Third, as discussed below, *Apprendi* has an exception: when imposing sentences, courts may consider the fact of a

---

[9] United States Sentencing Comm'n, Monitoring of Federal Criminal Sentences 2015--2016, *available at* https://www.icpsr.umich.edu/web/ICPSR/studies/36962/datadoc umentation#. These calculations use the 2015–2016 data because, although data is available for subsequent years through the Sentencing Commission, analyzing it requires the use of relatively advanced statistics software. The Commission ultimately makes these datasets available in more accessible formats, in partnership with the Inter-university Consortium for Political and Social Research, as it has for the 2015–2016 dataset used here.

[10] United States Sentencing Comm'n, Federal Probation and Supervised Release Violations 34 (July 2020).

prior conviction without requiring proof to a jury beyond a reasonable doubt because in the prior proceeding the defendant was afforded those rights. Yet, one surmises, situations in which the Government or the court will even be tempted to consider a violation sentence that would, when added to the time already served, exceed the statutory maximum for the underlying crime, will usually be in cases in which the defendant has been convicted of some new crime. Indeed, in this very case, if the government and the court had been content to charge and sentence Henderson solely on the basis of the violation arising from his new state court convictions, the constitutional issues presented here might have been avoided.

Picking up on the last point, the Government argues that there were no constitutional violations here because Henderson pled guilty to the state crimes. To be sure, based on Henderson's state convictions alone, the district court had the authority to find a violation, revoke Henderson's term of supervised release, and impose any reasonable sentence authorized by § 3583. But that is not what the district court did. It adjudged Henderson guilty of *three* violations and imposed a sentence on the basis of all three. Because two of those violations were unrelated to his guilty plea, and because Henderson was not offered and did not waive his Fifth and Sixth Amendment rights, the Court could impose no more than three months' imprisonment for those two violations. Therefore, the sentence must be vacated. *See United States v. Handa*, 122 F.3d 690, 691–92 (9th Cir. 1997), *as amended on reh'g* (Aug. 4, 1997) ("The court construes the multiple sentences given a defendant convicted of more than one count of a multiple count indictment as 'a package,' reflecting the likelihood that the sentencing judge will have attempted to impose an overall punishment taking into account the nature of the crimes and certain

characteristics of the criminal. . . . [T]his court has the authority to vacate all of the sentences imposed and to authorize the district court to begin the sentencing process afresh."); *United States v. Graves*, 925 F.3d 1036, 1041 (9th Cir. 2019) (where district court imposed mandatory minimum and this court found mandatory minimum did not apply, remanding for new sentence based upon a correct understanding of the law even though district court had stated that sentence would be the same regardless of whether mandatory minimum applied).[11]

Finally, the majority observes that other circuits have affirmed sentences like Henderson's. But no on-point case has engaged in plenary review of this important

---

[11] The Government also appears to argue that there were no constitutional issues because the defendant admitted to the specifications. This argument is foreclosed both by the Federal Rules of Criminal Procedure and by binding circuit precedent. Federal Rule of Criminal Procedure 23(a) provides: "If the defendant is entitled to a jury trial, the trial must be by jury unless (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." Here, the defendant was entitled to a jury trial on at least the specifications that did not relate to the state crimes, but he was neither advised of that right nor waived it, so the proceeding violated the Federal Rules. And even absent the Rule, it is well-established that a defendant cannot waive a right to a jury unless he is expressly advised of that right and makes "an express waiver . . . in open court." *U.S. v. Saadya*, 750 F.2d 1419, 1421 (9th Cir. 1985); *see also Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . we do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.") (internal quotation marks and citations omitted). Henderson, of course, did not waive his right to trial by jury.

constitutional issue.[12]     Rather, other circuits, like the majority here, have found themselves bound by circuit precedent. *See United States v. Salazar*, 987 F.3d 1248, 1261 n.9 (8th Cir. 2021) ("Because we have concluded that we are not 'writing on a blank slate,' we will not speculate as to whether, if we were free to reconsider *Robinson*, we would arrive at the same conclusion."); *United States v. Doka*, 955 F.3d 290, 298 (2d Cir. 2020) (on plain error review, holding that "[w]here, as here, the Supreme Court has not undermined[] our Court's clear precedent on the vitality of § 3583(e)(3), we must apply that longstanding precedent and thus reject Doka's constitutional challenge"); *see also United States v. Seighman*, 966 F.3d 237, (3d Cir. 2020) (noting that in light of circuit precedent defendant was "merely preserving this argument for Supreme Court review").

While sentences like Henderson's are rare, "[a]t stake in this case are constitutional protections of surpassing

---

[12] Many of the out-of-circuit cases cited by the majority are not on-point because the defendants did not object to an aggregate sentence that, like Henderson's, surpassed the statutory maximum for the crime of conviction. *See United States v. Eagle Chasing*, 965 F.3d 647, 651 (8th Cir. 2020) ("Even assuming that, in a future case, the [Supreme] Court follows the [*Haymond*] plurality and holds 'a small set of [§ 3583(e)] cases' do 'turn[] out to raise Sixth Amendment issues' when the sum of a defendant's initial and revocation sentences is a total term of imprisonment exceeding the statutory maximum for the original crime of conviction, Eagle Chasing would not be impacted because his second degree murder conviction carries a maximum sentence of life in prison.") (some alterations in original); *United States v. Coston*, 964 F.3d 289, 294 (4th Cir. 2020) (same); *United States v. Cenna*, 448 F.3d 1279 (11th Cir. 2006) (affirming *imposition* of supervised release, not revocation); *United States v. Wirth*, 250 F.3d 165, 170 n.3 (2d Cir. 2001) (per curiam) (rejecting an argument like Henderson's, but, as in *Purvis*, engaging in no Sixth Amendment analysis).

importance: the proscription of any deprivation of liberty without 'due process of law,' and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.'" *Apprendi*, 530 U.S. at 476–77 (citations omitted). These rights are "the heart and lungs, the mainspring and the center wheel of our liberties, without which the body must die; the watch must run down; the government must become arbitrary." *Haymond*, 139 S. Ct. at 2375 (plurality) (internal quotation marks and citation omitted).

For the foregoing reasons, I would vacate the judgment and remand the matter to the district court for further proceedings.